IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RENEE BRAUND,

                    Plaintiff,

        v.

CAROLYN W. COLVIN,
Acting Commissioner, Social
Security Administration,

                    Defendant.

OPINION AND ORDER

13-cv-316-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Renee Braund is seeking reversal of the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff's application for disability insurance benefits and supplemental security income.  Plaintiff contends that she is prevented from working at a full time job because she suffers from back pain that has not been completely alleviated by surgery; she has hypothyroidism, which causes severe aching in her upper extremities if she does not take her medication; and she has a history of depression and anxiety.  She says that the administrative law judge did an inadequate job of assessing her credibility, that he did not give the weight he should have to her medical conditions and that he erred in assessing those conditions against the Social Security Listings of impairments.  In response, defendant argues that the administrative law judge provided specific reasons for discounting plaintiff's statements about her impairments and reasonably

found plaintiff to be capable of doing sedentary work that was simple, routine and repetitive and allowed her to use a cane for balancing.

The administrative law judge's opinion is not perfect, but it is possible to trace his reasoning and understand why he reached the decision he did, which is supported by substantial evidence.


RECORD EVIDENCE

A. Background

Plaintiff Renee Braund was born in 1968. She has a high school education and attended beauty school. Her most recent employer was an a casino, where she did cleaning and maintenance and was on her feet for 8 ½ hours a day. She operated machinery such as vacuum cleaners and floor cleaners, and she lifted up to 50 pounds at a time. She left that job at the end of 2009.

Plaintiff applied for social security benefits in June 2011, saying she was disabled by back pain, hypothyroidism, depression and anxiety. At the time, she was unmarried and caring for her four children, whose ages ranged from 19 to four. She lived in a two story house with her children and two roommates.


B. Medical Evidence

Sometime in May 2010, plaintiff began complaining to doctors about back pain. AR 250. Dr. Stuart Turner observed bilateral paralumbar tenderness, minimal sacroiliac joint

tenderness and mildly decreased flexion of the spine.  Plaintiff seemed to have pain and numbness in straight leg raising.  Id.  An MRI revealed significant degeneration and foraminal stenosis, AR 245.  The neurosurgeon observed on physical examination that plaintiff had pain to palpation over her sacroiliac joints and lumbosacral complex, but her straight leg raising was negative and she had a normal gait and no focal weakness.  Id.

In August 2010, plaintiff underwent a spinal fusion, AR 223-25, which appears to have been successful because she was able to stop using narcotic pain medication over the next few months and participate in physical therapy for about six months.  AR 530-31.  However, on October 5, 2010, she told a physical therapist she saw for an initial evaluation that she did not think she would be able to go back to work and was applying for disability.  AR 541.  She had a left foot drop, AR 520, that was not resolved until January 2011.  AR 466.

On January 10, 2011, plaintiff told her physical therapist that she was concerned about bilateral upper extremity numbness and weakness.  AR 466.  Around the same time, her primary care doctor, Amy Groff, referred her for treatment of depression and anxiety.  AR 770.  Plaintiff told the clinical social worker she saw that she had had difficulty functioning since her back surgery the preceding August and did not "feel like herself."  Id.  She said she had struggled with depression and anxiety all her life.  She was having financial trouble, difficulty with her roommates, pain in her lower and upper back and upper extremities and was caring for her four children.  Id.

Psychiatrist Tal Herbsman met with plaintiff on January 21, 2011, took a history,

3

assessed her Global Assessment of Functioning (GAF) as 65 and made changes in her medications. AR 756-60. His tentative diagnosis was anxiety and depression. AR 760.

On February 17, 2011, plaintiff told the clinical social worker that her depression and anxiety had decreased significantly, but that she still had pain in her neck, arm and hands. AR 751. On April 26, 2011 and on May 16, 2011, plaintiff saw Janice Cain, Ph.D., a psychotherapist. AR 709. On June 3, 2011, Cain prepared a mental health report at the request of the state agency, saying that she had seen plaintiff twice, that plaintiff suffered from 316 Psychological Factors [illegible] Medical Condition and 311 Depressive Disorder NOS. AR 680. She assessed plaintiff's GAF as 55. It was her opinion that plaintiff had moderate restrictions in activities of daily living and in maintaining social functioning but would only seldom experience deficiencies of concentration, persistence and pace resulting in failure to complete tasks in timely manner. AR 682. She also found that plaintiff would have continual episodes of decompensation in work or work-like settings. Id. Plaintiff saw Cain once more, on June 15, 2011, at which time Cain described her as "friendly, talkative, almost cheerful." Plaintiff told Cain she was feeling "much better now that her hypothyroidism is better managed." AR 709.

In the spring of 2011, plaintiff's upper back and upper extremity pain was diagnosed as Hashimoto's Disease.

In July 2011, surgeons removed plaintiff's thyroid gland. AR 962-63. In August, she was still having some signs of mild hypothyroidism and her treating doctor adjusted her medication regime. AR 965. In November 2011, she told a physician's assistant at the

4

Neurosurgery and Spine Center that she felt much better.  AR 915.

In October 2011, plaintiff returned to physical therapy.  She told the therapist that her back pain felt like cramping and the pain was aggravated by lifting, standing walking and twisting and was improved by rest.  The therapist found her lumbar spine flexion was limited, but that her lower extremities were within normal limits, with some lack of flexibility in her hamstring muscles.  Id.

On November 1, 2011, plaintiff told Dr. Groff that her back pain had returned, that it had been worsening for months, that it was constant, with sharp pains "at times with underlying aching," and that she felt a "clunking" in her back on extension or flexion.  AR 921.  Groff found that plaintiff had tenderness over her bilateral lower lumbar transverse processes, no midline tenderness and "5/5 strength" in her bilateral lower extremities.  Id.  She ordered imaging studies, which showed no significant changes from plaintiff's post-surgery status the year before.  AR 893.

In February 2012, plaintiff returned to see Dr. Groff, AR 881-85, and told a physician's assistant working with Groff that she had continuing severe back pain, a clunking feeling in her back, but no radicular pain in her lower extremities.  AR 887.  She said she had been participating in physical therapy for core strengthening and was doing exercises twice a day.  Id.  The physician's assistant noted that plaintiff continued to have 5/5 muscle strength through all muscle groups, normal gait and stance and was able to walk on her heels, toes and in tandem, but her lumbar range of motion was painful in all directions.  Id.

## C. Reports of Treating Physicians

Dr. Groff prepared a report in May 2011, in which she found that plaintiff had diffuse back pain secondary to suspected hypothyroidism, along with low back pain. AR 365. In 2011, she completed a Medical Examination and Capacity form, in which she said that plaintiff could only rarely stoop, crouch or climb stairs and that she should never climb ladders. AR 366. She also noted that plaintiff's arm pain was improving as her thyroid problems were being corrected. Id. She did not think that plaintiff's symptoms would interfere with the performance of simple work tasks. Id. She anticipated reviewing plaintiff's medical condition within three to six months. AR 367.

Dr. Janice Cain prepared a report in June 2011, after two psychotherapy sessions with plaintiff. AR 684. She found that plaintiff had continual episodes of decompensation and moderate restrictions in activities of daily living and in maintaining social functioning but that she would seldom have any deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. AR 682. She wrote that plaintiff had poor mental abilities and poor aptitude for work in only three areas: completing a normal workday without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest [periods] and performing fast paced tasks such as on a production line. Id. She thought plaintiff could work only two to four hours a day and that plaintiff's then current mental limitations should be reviewed in six months. AR 684.

6

D. <u>Consultants' Reports</u>

State agency consultant Dr. David Kamper evaluated plaintiff's medical records in October 2010 and concluded that plaintiff could sit for about six hours in an eight-hour workday, stand or walk for about two hours and lift less than 10 pounds frequently and 10 pounds occasionally.  AR 358.  He found plaintiff's statements partially credible as she recovered from her recent back surgery but that her statements about her limitations caused by pain were more severe than what the medical evidence "reasonably supports."  AR 362.

State agency consultant Dr. Mina Korshidi reviewed plaintiff's records in June 2011. She agreed with Kamper's work restrictions, AR 686-89, and noted that plaintiff had been making progress toward a sedentary residual functional capacity with regard to her spondylolysis but her progress was stalled by her hypothyroidism, a condition unrelated to her original diagnosis of spondylolysis.  AR 692.   In Korshidi's opinion, neither condition met the duration requirement for a disability finding.  <u>Id</u>.

In a psychological report dated October 4, 2010, agency consultant Jack Spear concluded that plaintiff had no severe mental impairments, AR 343, although she did have depression, AR 346, and anxiety, AR 348.  He concluded also that plaintiff had no difficulties in maintaining social functioning, only mild difficulties in activities of daily living and maintaining concentration, persistence or pace and that she had no episodes of decompensation.  AR 353-54.

In a later psychological report dated June 24, 2011, agency consultant Eric Edelman, assessed plaintiff's degree of limitation as mild in activities of daily living, maintaining social

functioning and maintaining concentration, persistence or pace, with no episodes of decompensation. AR 703. He gave Janice Cain's report little weight, noting that Cain had seen plaintiff only twice, her report was based primarily on plaintiff's physical symptoms, which were outside her area of expertise, and she had not given any consideration to plaintiff's improvement in those symptoms. AR 705.


### E. Administrative Hearing

At her April 2012 hearing before the administrative law judge, plaintiff testified that she was still wearing a support brace on her waist following her 2010 surgery because she could walk only about one and one-half blocks without it, and that she used a walker whenever she knew she would be doing a lot of walking. Otherwise, she used a cane. AR 66. She testified that some days she could not get out of bed because of her pain, that she had trouble sitting and spent many of her days lying on a couch with a pillow under her legs to relieve her back pain. She used a mechanical "grabber" to pick up objects on the floor and her older daughters helped her with shopping and chores and taking her four year old to school. AR 72-75. She also said that she did not go to movies because her need to change positions often would be a distraction to other patrons. AR 76.

Plaintiff did not say anything at the hearing about depression or anxiety, but she did say that she experienced some stress about not being able to afford clothes for her children because she was unable to work. AR 69. She testified that she did not feel pain from her Hashimoto's Disease unless she forgot to take her medication. AR 69.

A vocational expert testified that a person of plaintiff's age, having her education and work experience, the ability to lift 10 pounds occasionally, five pounds frequently, stand for two out of eight hours and sit for six out of eight hours and with the ability to do simple, routine and repetitive work, respond appropriately to supervisors, coworkers and the public, to understand, carry out and remember simple instructions and to adjust to routine changes in the work setting would not be able to perform plaintiff's past relevant work. However, such a person would be able to work at other jobs that existed in the economy, AR 78-80. such as semiconductor loader, telephone quotation clerk and document preparer, all of which exist in relatively large numbers in Wisconsin. Using a cane for supplemental balancing would not prevent plaintiff from performing those jobs. Id. The expert added that if plaintiff was limited to standing or sitting only four to six hours in an eight-hour workday with no more than 20-30 minutes in either position, she would be unable to perform past relevant work or any work in the economy. AR 81.

F. Administrative Law Judge's Decision

The administrative law judge found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, that she had not engaged in any substantial gainful activity since her alleged onset date of August 23, 2010 and that she had the severe impairments of degenerative disc disease and spondylolsis of the lumbar spine, "status post fusion," hypothyroidism, depression and anxiety. AR 15. He found that none of these impairments were equivalent to a listed impairment in 20 C.F.R. Part 404, Subpart

P, App. 1.  With regard to plaintiff's back pain, he found that the records showed "no evidence of nerve root compression accompanied by sensory or reflex loss, or spinal arachnoiditis confirmed by operative note or surgical pathology report, nor is there evidence of lumbar spinal stenosis resulting in pseudoclaudiation, as required by listing 1.04." AR 16.

Turning to plaintiff's hypothyroidism, which did not have an associated listing, the administrative law judge compared the signs and symptoms for the condition with those for other body systems and also noted that endocrine disorders may limit an individual's ability to work fulltime.  Even so, he found that the condition did not meet any listing.

The administrative law judge found that plaintiff's mental impairments did not equal the criteria of listings 12.04 or 12.06 because plaintiff did not have marked restrictions in activities of daily living or in maintaining social functioning, in maintaining concentration, persistence or pace and did not have a record of repeated episodes of decompensation of extended duration.  AR 16.  Although plaintiff had claimed depression and anxiety as impairments, these caused her only mild difficulties in daily living and in social functioning, although she had moderate difficulties in maintaining concentration, persistence and pace. AR 17.

The administrative law judge gave "some weight" to Dr. Cain's June 3, 2011 report but he rejected some of her opinions because she had seen plaintiff only twice and had expected that plaintiff's symptoms would not persist for a period of 12 months.  AR 22.  He agreed with Cain that plaintiff had a good ability to interact with supervisors and the public, understand, remember and carry out simple instructions, maintain attention and adapt

10

insofar as she reported that plaintiff had a good ability to interact with supervisors and the public, understand, remember and carry out simple instructions, maintain attention and adapt to change. He did not agree with her opinion that plaintiff could work only two to four hours a day and would be unable to complete a workday or workweek without interruptions from psychologically based symptoms. AR 22. He rejected her finding that plaintiff would have a poor ability to perform at a consistent pace and perform fast-paced tasks because plaintiff had been able "to engage in goal-oriented activities throughout the relevant period such as caring for her children" and had "reported no difficulty in maintaining concentration and attention, understanding instructions, or adapting to change." AR 17. Moreover, he added, her mental status examinations had shown no evidence of significant defects in this area. Id. Finally, he determined that her mental impairments had not caused any episodes of decompensation of extended duration, without saying anything about Cain's finding that plaintiff would have continual episodes of decompensation in the workplace. Id.

In assessing plaintiff's ability to work, the administrative law judge found that plaintiff had the residual functional capacity to perform sedentary work, so long as she had a cane to help with balancing and the work was simple, routine and repetitive. AR 18. She could understand, remember and carry out simple instructions, respond appropriately to supervisors, coworkers and the public and adjust to routine changes in the work setting. Id. Although he had concluded that plaintiff's back problems, hypothyroidism, depression and anxiety were severe impairments, he found that plaintiff's reports of their intensity, persistence and limiting effects were not credible "to the extent they are inconsistent with the

11

above residual functional capacity assessment.  AR 19.  He observed that despite plaintiff's statements that her back pain had been present from the time she was 12, since then she had been able to perform work that was above substantial gainful activity levels; her medical records showed no medical care or treatment for back pain before May 2010; she had fusion surgery shortly thereafter; she stopped all narcotic pain medication within six weeks of the surgery; and began physical therapy in October 2010.  Id.  A year later, she began to report increased back pain, but a lumbar spine x-ray and a CT scan in November 2011 showed no change from the previous year's images.  She had normal alignment, intact hardware and no significant degenerative changes.  Id.

The administrative law judge was not persuaded that plaintiff's accounts of severe pain and significant functional limitations were supported by the record evidence because she had immediate improvement in her back following surgery and needed no regular care or treatment between March and October 2011, her subsequent reports of increased pain were not supported by x-rays or CT scans and her physical examinations were unremarkable.  AR 21.  Nevertheless, he limited her to no more than sedentary work and required the use of a cane to help stabilize her balance and "give some benefit of the doubt to her subjective testimony.  Id.  He was not persuaded by Dr. Groff's May 2011 statements restricting plaintiff to occasional twisting, rare bending, crouching or climbing stairs because the doctor had not said that the restrictions had been present for a year and she contemplated reviewing them in three to six months.  AR 22.  In addition, he did not think Groff's limitations were supported by objective findings or other medical evidence.  Id.

12

In assessing the effects of plaintiff's depression and anxiety, the administrative law judge found that her mental impairments would limit her to unskilled work, although he was not persuaded that she had any symptoms or difficulties in social or vocational functioning now that she was on medication and had had counseling.  AR 21.  He noted that the medical records did not show that plaintiff had had any mental health care or treatment after June 2011 and that during the hearing, she had not reported any significant mental limitations. Id.  However, he disagreed with the opinions of the state agency psychological consultants who had concluded that plaintiff's mental impairments were non-severe and did not cause more than mild functional limitations.  Instead, he found that the additional evidence received at the hearing showed that plaintiff had "more than minimal" work-related limitations consistent with those he had found.  AR 22.

As for work capacity, the administrative law judge concluded that plaintiff had not been under a disability from August 23, 2010 through the date of his decision (April 20, 2012).  She could not perform any past relevant work, but she could perform sedentary work that was simple, routine and repetitive and allowed her to use a cane for balancing. Specifically, she could perform the requirements of representative jobs, including semiconductor loader, telephone quotation clerk and document preparer.  AR 23.


OPINION

The only issue is the usual one in Social Security cases:  whether the administrative law judge provided an adequate explanation of his conclusion that plaintiff is not so disabled

13

that she cannot perform fulltime work that is available in the economy.  Plaintiff levels a barrage of criticisms at the administrative law judge's decision and his reasoning, but none of these criticisms undermine that decision.

### A. Credibility

Plaintiff starts by attacking the administrative law judge's employment of the "meaningless boilerplate" that the Court of Appeals for the Seventh Circuit has criticized repeatedly to no real effect.  Administrative law judges continue to make their residual functional capacity determinations and follow them by saying that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." As the court of appeals pointed out in Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012), proceeding in this way "gets things backward."  Doubts about credibility are critical to the assessment of the claimant's ability to work, "yet the boilerplate implies that the determination of credibility is assessed without regard to credibility, even though it often can't be."  Id. at 645-46.

In this instance, however, the administrative law judge followed up his residual functional capacity finding with a thorough explanation of his reasons for finding a lack of credibility in plaintiff's allegations about the symptoms of her impairments and her resulting limitations.  Pepper v. Colvin, 712 F.3d 351, 367-68 (7th Cir. 2013) (administrative law judge's discussion of claimant's testimony sufficient to allow reviewing court to examine

14

evidence he relied upon in finding plaintiff not full credible, although discussion followed residual capacity finding).  He explained the many reasons for questioning plaintiff's credibility:  (1) the conflict between her statements that she had suffered from back pain since she was 12 and her long work history and lack of any medical records showing a complaint of back pain before May 2010; (2) her statement in her application for disability benefits that she had stopped working at the casino because of her back problems, when she told others that she had left because she was the subject of sexual harassment and the record shows no medical care for back problems around the time she left the job in December 2009; (3) the discrepancies between her complaints of back pain in June 2010 and her physical examination that showed decreased range of motion in the lumbar area but normal strength, normal gait, negative straight leg raising signs and no focal weakness; (4) her good recovery from her August 2010 back surgery, including her ability to stop her pain medication within a few months; (5) her statement soon after her successful surgery that she would not be able to return to work; (6) her continuing complaints of pain despite her increasing strength and pain control as a result of her participation in physical therapy from October 2010 to March 2011; (7) her failure to continue physical therapy after March 2011, when she was making progress; (8) her October 2011 complaints of increased back pain after no complaints or treatment for the preceding six months; (9) the inconsistencies between her complaints of pain and the results of her physical examinations and MRIs; (10) her November 2011 and February 2012 x-rays and CT scans showing normal alignment of her spine, intact hardware and no significant degenerative changes in her back; and (11) her ability to live

independently, attend to personal care tasks, prepare meals, manage her finances, drive a vehicle, shop and care for her children.

Plaintiff argues that the administrative law judge failed to take into consideration her depression, anxiety and Hashimoto's disease when determining her credibility, without explaining how doing so would have affected his conclusion that she was not believable. His attention was focused appropriately on her complaints of back pain, because both the Hashimoto's Disease and her mental impairments were treated adequately with medication.

## B. Evaluation of Listings

Without explaining the bases for his findings, the administrative law judge determined that plaintiff's spondylolsis, thyroid problems, anxiety and depression were severe impairments despite the evidence that showed that none of them met the duration requirement in 20 C.F.R. § 404.1509 that it must have lasted or be expected to last at least a year. Plaintiff's spinal problems were under control in less than a year; her thyroid problem had been treated within seven months; and her anxiety and depression were resolved within a relatively brief time. The fact that she was still on medication for one or more of these problems (and may be for the rest of her life), is irrelevant. Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010) (condition is not disabling if it is controlled by medication) (citing Prochaska v. Barnhart, 454 F.3d 731, 737 (7th Cir. 2006) (depression controlled by medication is not disabling)). However, plaintiff has no reason to challenge that favorable determination, so I will turn to the next step of the administrative law judge's analysis to which plaintiff does object, which

was his finding that none of these impairments met or equaled a listing.

Because it is unlikely that plaintiff's problems amounted to severe impairments, it is not surprising that the administrative law judge found none of them equivalent to a listed impairment. Plaintiff challenges the decision not to include her hypothyroidism as equivalent to a listed impairment, saying that the administrative law judge's failure to explain it and its relation to her other impairments resulted in a step three determination that was not based on the entire record. The administrative law judge observed that no treating or examining source had attributed "additional or cumulative limitations to the claimant's endocrine disorder," but that he had nevertheless considered whether plaintiff's endocrine disorder had limited her ability to sustain regular activity before concluding that it did not meet the criteria of Listing 9.00C. AR 16. Even assuming that the pain played into her anxiety and depression, the record shows that those mental conditions were no longer severe after the source of her upper body pain had been determined. In the face of evidence that the disease had been controlled by surgery and medication well within a year, he had no need to explain his conclusion more thoroughly.

It was not error for the administrative law judge to find that plaintiff's mental impairments did not meet a listing. Plaintiff's only argument in support of her contention that the administrative law judge failed to accurately and fairly evaluate the evidence "as to the B criteria" is that she was seeing a therapist and taking medication. This is not enough. To meet the B criteria, a claimant must show that she has at least two of the following: marked restrictions in activities of daily life, in maintaining social functioning or in maintaining

17

concentration, persistence or pace or repeated episodes of decompensation.  20 C.F.R. Part 404, Subpart P, App. 1. § 12.02(B).  Nothing in the record supports a finding that she meets the B criteria.

Plaintiff argues that as to the C criteria, the administrative law judge erred in not appreciating the severe and intractable nature of her mental suffering or the effect of her pain on her mental suffering.  The C criteria require repeated episodes of decompensation, along with a medically documented history "of a chronic mental disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support.  Id., § 12.02(C).  Plaintiff argues that at least one court has defined an episode of decompensation as "a temporary increase in symptoms," Zabala v. Astrue, 595 F.3d 402, 405 (2d Cir. 2010), but a look at the Zabala case shows that the court did not attempt a careful definition of an episode of decompensation; it merely slipped in the words, "a temporary increase in symptoms" as a shorthand explanation.  The term means more than just any temporary increase in symptoms.  The Social Security Administration defines such episodes as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration , persistence, or pace."  United States Social Security Administration, Disability Evaluation under Social Security § 12.00 (June 2006) available at htt:/www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm. (cited in Kohler v. Astrue, 546 F.3d 260, 266 n.5 (2d Cir. 2008)).  Plaintiff has

not identified any evidence in the record that would have supported a finding by the administrative law judge that she had experienced repeated episodes of decompensation.  To the contrary, the record showed that she had had symptoms of mental problems only from late 2010 to January 2011 and that she had significant improvement within months and had no difficulty with memory, attention or concentration.  Not much weight can be placed on her GAF scores, which ranged from 52-65, because none of the mental health providers who assessed the scores saw her for more than two sessions before making the assessment.  In light of her testimony at her hearing, at which she did not report any significant mental limitations, plaintiff cannot show that the administrative law judge erred in finding that her mental impairments were not equal to any listing.

Finally, the administrative law judge explained that plaintiff's back problems did not meet any listed impairment because plaintiff did not have any evidence of nerve root compression accompanied by sensory or reflex loss, or of spinal arachnoiditis confirmed by operative note or surgical pathology report or any evidence of lumbar spinal stenosis resulting in pseudoclaudiation.

## C. Opinions of State Agency Consultants

The administrative law judge wrote that he had given "great weight" to the opinions of the medical consultants, who concluded that plaintiff was capable of doing sedentary work, AR 21, saying that their opinions were consistent with the medical findings and overall treatment documentation.  He did not explain why he was giving little weight to the

psychological consultants, but simply said that he thought that plaintiff's impairments caused her more than the minimal work related limitations the consultants had found.  Plaintiff takes issue with the administrative law judge's failure to explain what standards he was applying to the opinions of those consultants, but does not explain how this omission hurt her case.

### D. Opinions of Treating Sources

Plaintiff takes issue with the administrative law judge's failure to give more weight to Dr. Groff's opinion that plaintiff could rarely stoop, saying that such a restriction might bar sedentary work, which generally requires an ability to stoop occasionally, that is, "from very little to up to one-third of the time." SSR 96-9p.  She argues that if he disagreed with Groff's opinion, he had an obligation to go back to her to clarify the doctor's position.  In addition, she says he erred in saying that the opinion was not supported by objective findings or other medical evidence contained in the record.

The administrative law judge had no obligation to obtain additional information from Groff unless he believed that the evidence of record was insufficient to make a determination of disability.  Skarbeck v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(e)).  That was not the situation in this case; the evidence was sufficient for a determination.  Moreover, he did not err in saying that the opinion was not supported by objective findings.  In preparing her report, Groff relied on plaintiff's low back pain and then-current arm pain resulting from hypothyroidism, but anticipated reviewing the limitations within a few months.  The administrative law judge had found that plaintiff's hypothyroidism

20

was controlled by her July 2011 thyroidectomy and had explained at length why he was unpersuaded that plaintiff had the back pain she claimed to have.  It was not necessary for him to go through this again.

## E. Residual Functional Capacity - Step 5

Plaintiff's final objection is to the administrative law judge's hypothetical question to the vocational expert, using "simple, routine and repetitive work" as a proxy for plaintiff's mental abilities.  She says that this terminology does not take the place of the specific limitations he should have identified in her concentration, persistence and pace.  It is true that in O'Connor-Spinner v. Astrue, 627 F.3d 614 (7th Cir. 2010), the court of appeals held that a somewhat similar hypothetical question to a vocational expert did not give the expert sufficient information to enable her to determine whether the claimant could perform jobs in the economy.  However, in the same opinion, the court pointed out that it had let stand hypothetical questions that did not use the precise phrasing  (concentration, persistence or pace), "when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform," such as when the claimant's limitations were related to stress or panic attacks and the hypothetical restricted the work to low stress.  Id. at 619.

In this case, there was little if any evidence that plaintiff had any deficits in her ability to maintain concentration, persistence and pace.  As the administrative law judge noted, she had reported no difficulties in maintaining concentration or pace, mental examinations had

"not revealed objective findings consistent with significant deficits in [her] ability to maintain concentration, persistence or pace," AR 17, her treatment notes showed that she had made significant improvements within a short time of beginning treatment for her depression and anxiety and she reported no significant mental limitations during her testimony at the hearing. Under the circumstances, the administrative law judge's imprecise wording would not have misled the vocational expert about the nature of the tasks that plaintiff could perform.

In summary, I conclude that plaintiff has failed to show that the administrative law judge erred in deciding her case.

ORDER

IT IS ORDERED that plaintiff Renee Braund's motion for summary judgment, dkt. #8, is DENIED and the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff's application for disability insurance benefits and supplemental security income is AFFIRMED.  The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 26th day of February, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

22